STATE OF MARYLAND ET AL. *v.* JEFFREY I.
FRIEDMAN ET AL.

[No. 32, September Term, 1978.]

*Decided November 9, 1978.*

702

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ▌LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Fred Oken, Chief Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General,* and *Robert A. Zarnoch, Assistant Attorney General,* on the brief, for appellants.

*Joseph S. Kaufman,* with whom were *Melnicove, Kaufman & Weiner, P.A.* on the brief for appellee Gordon E. Sugar, Inc.; *Harry M. Ashman* on the brief for appellee B. Stanley Resnick et ux. and *Louis J. Glick, Alan M. Foreman* and *Burke, Gerber & Wilen* on the brief for appellee Ace Tile Company.

DIGGES, J., delivered the opinion of the Court.

The issue that we determine to be dispositive of this appeal can be succinctly stated: Was it proper here for the trial court to fix priorities among competing claimants to a fund that was established in connection with the attachment on original process portion of these proceedings before adjudicating the

cause of action set out in the declaration? Because we conclude that the matter was unripe for decision when the court order establishing priorities was signed, we reverse and remand the case for further proceedings.

Although the parties are in sharp disagreement as to the legal principles to be applied here, the relevant facts are free from dispute. The record establishes that the State of Maryland filed its declaration in the Circuit Court for Baltimore County on January 21, 1977, by which it sought damages from Jeffrey I. Friedman and his wife, Carolyn R. Friedman. As the basis for its claim, the plaintiff alleged that while employed at the University of Maryland Hospital Mr. Friedman stole, embezzled, or obtained through fraud $400,000 (later amended to $750,000) belonging to the State and converted it to the use of both his wife and himself. Accompanying the declaration was an application to the court for the issuance of a writ of attachment on original process so as to prevent the fraudulent disposition, assignment, or concealment of any of the assets possessed by the Friedmans. Md. Rules G40 *et seq.* The trial court granted the request, Md. Rule G44, and the sheriff of Baltimore County executed the writ on January 26, 1977, by levying on, among other properties, the residence located at 6 Stone Hollow Court, Garrison, Baltimore County, Maryland, which the Friedmans owned as tenants by the entireties.

Thereafter, when the mortgage on the home fell into default and foreclosure was threatened, the court, with the consent of the State and the Friedmans, authorized a private sale of the property to Mr. and Mrs. B. Stanley Resnick. Md. Rule G60. Upon the consummation of this transaction on May 24, 1977, concededly prior liens and expenses were satisfied and the net proceeds, amounting to $125,727.43, were paid into the registry of the court to stand for the property. *Id.* It is this fund that has provided the genesis of the present appeal because two additional claimants, the appellees here, came forward to assert that they have liens that must be satisfied in full from the moneys on deposit with the court before there can be a distribution to the State or anyone else.

The claims of the two appellees stand independent of each other. That of appellee Gordon E. Sugar, Inc., initiated by petition on June 21, 1977, was for payment of a $10,000 mechanics' lien against the 6 Stone Hollow Court property, which it had established on May 9, 1977, in the Circuit Court for Baltimore County under Rule BG73. The other appellee, Ace Tile Co., Inc., filed its petition for payment on July 19, 1977. The basis of its claim was a judgment obtained against the Friedmans in the District Court of Maryland on December 6, 1976, in the amount of $1,569, which later became a lien against their real and leasehold property when it was recorded pursuant to Rule 620 f in the Circuit Court for Baltimore County on June 15, 1977.

For four months after appellees filed their claims there was sporadic activity of record in these proceedings until Mr. Friedman, acting in accord with a plea bargain agreement he made as the defendant in a related criminal cause, confessed judgment in this civil action on November 15th in favor of the State for $556,338.34. Following this disposition of the appellant's civil suit against Mr. Friedman, but with the case against Mrs. Friedman remaining unresolved, the trial court proceeded to consolidate and then hear the appellees' request that each be paid its claim in full from the funds on deposit in the registry of the court. In an oral opinion delivered on January 11, 1978, Chief Judge John E. Raine, Jr., ruled that both the mechanics' and judgment liens enjoyed a priority status over the State's claim because, while Sugar and Ace held what were in effect valid perfected judgments against the Friedmans jointly, the State as of that date had secured no joint judgment against the husband and wife so as to establish a lien against the tenancy by the entirety property. The judge further explained:

> It is argued that the case should be deferred and that the Sugar and Ace Tile interests should have to wait until the State has a chance to perfect its claim as against Carolyn Friedman. And the State argues that if they eventually get a judgment against Carolyn Friedman, that at that time they will then have a claim against both of the spouses, who hold

the property as tenants by the entireties, and that the doctrine of relation back would allow them priority; because if you relate the date of an establishment of a lien against both spouses back to the date of the attachment, then, the result would be that the State's lien would spring into being as of January the 20th of 1977, which is before Sugar established his lien and before Ace Tile established their lien.

But where you have the State that is not a bona fide purchaser, the Court is not going to apply the doctrine of relation back and thereby destroy the interest of other lien creditors.

It was the written order formalizing this ruling that precipitated the present appeal.[1]

In seeking to resolve the issues concerning the propriety of the trial court's action, two somewhat independent but here related legal principles affect a proper disposition of this appeal, namely, the attributes of ownership of property as tenants by the entireties and those relating to attachments on original process. Considering first the incidents of ownership of property by the entireties, we observe that these estates in Maryland in general still retain the common law incidents that adhered to them. Such tenants, who can only be husband and wife, are in legal concept but one person, each being seized of the entirety, with the survivor taking the whole. *Marburg v. Cole,* 49 Md. 402, 411 (1878).

Among the additional incidents of entireties property are several that have special significance here. Included are the doctrines that property possessed in this fashion cannot be disposed of by one spouse without the consent of the other, *Ades v. Caplin,* 132 Md. 66, 69, 103 A. 94, 95 (1918), and that "neither has such an interest in it as can be subjected to the lien of a judgment for his debts or as can be levied upon and sold under legal process against him." *Phillips v. Krakower,* 46 F. 2d 764, 765 (4th Cir. 1931) (applying Maryland law); *see*

---

1. No one questions the timing of this order of appeal and we do not consider the matter.

*East. Shore v. Bank of Somerset,* 253 Md. 525, 532, 253 A. 2d 367, 371 (1969); *Keen v. Keen,* 191 Md. 31, 37, 60 A. 2d 200, 204 (1948); *Jordan v. Reynolds,* 105 Md. 288, 294, 66 A. 37, 38 (1907); *cf.* Md. Const., Art. III, § 43. Further, separate judgments obtained by a single creditor against a husband and wife that are based on separate transactions will not suffice to create a lien on entireties property; only a judgment obtained against both husband and wife arising out of a joint obligation may be satisfied by execution upon property held by the entireties. *See, e.g., Lake v. Callis,* 202 Md. 581, 588, 97 A. 2d 316, 319 (1953) (entireties property not subject to judgment against husband and wife if wife was surety on rather than maker of note); *A. Hupfel's Sons v. Getty,* 299 F. 939, 940-42 (3d Cir. 1924) (applying Pennsylvania law) (assumption of husband's indebtedness by wife is not joint act subjecting entireties property to judgment lien); *Southern Distributing Co. v. Carraway,* 189 N. C. 420, 127 S. E. 427, 428-29 (1925) (when husband only secondarily liable on debt, property held by entireties not subject to attachment since judgment not rendered on joint obligation); *cf. Frey v. McGaw,* 127 Md. 23, 25, 95 A. 960, 961 (1915).

Turning now to a consideration of attachment on original process, we observe that this remedial procedure, long used in Maryland,[2] 4 H. Sachs, *Poe's Pleading and Practice* § 502, at 135 (6th ed. 1975), is designed to accomplish the dual purpose of compelling the defendant's appearance in court as well as providing the plaintiff with security for the payment of his claim once it is established as being due. *Philbin v. Thurn,* 103 Md. 342, 351, 63 A. 571, 574 (1906); *see Belcher v. Gov't Employees Ins. Co.,* 282 Md. 718, 720, 387 A. 2d 770, 772 (1978). This security is obtained when a levy is made because that act creates an inchoate lien that remains as such until a judgment of condemnation absolute is entered under

2. Our attachment laws are an outgrowth of the "foreign attachment" proceedings prevailing under the customs of London. W. Hodge & R. McLane, *The Law of Attachment in Maryland* § 1, at 1 (1895). While this remedy forms a part of the common law, it is considered as having been introduced into this State with the General Assembly's enactment of chapter 40 of the Acts of 1715. *Id.* The remedy of attachment on original process is currently embodied in Md. Code (1974 & 1978 Cum. Supp.), §§ 3-301 to 3-305 of the Courts Article, and subtitle G of chapter 1100 of the Maryland Rules.

Rule G55. *Northwestern N. Ins. v. Wetherall,* 267 Md. 378, 384, 298 A. 2d 1, 5 (1972); *Union Trust Co. v. Biggs,* 153 Md. 50, 57, 137 A. 509, 513 (1927); W. Hodge & R. McLane, *The Law of Attachment in Maryland* § 192, at 171 (1895).

One of the incidents of attachments on original process that is of particular importance in the case now before this Court is the doctrine of relation back. This doctrine recognizes that "[t]hrough the issue and laying of [an] attachment . . . the [creditor] acquire[s] an inchoate lien . . . [that] continues and binds the property attached, and abides the issue of the short note [primary] case . . . ." *Union Trust Co. v. Biggs, supra,* 153 Md. at 57, 137 A. at 513; *see Gribble v. Stearman & Kaplan, Inc.,* 249 Md. 289, 294-95, 239 A. 2d 573, 576 (1968); *Cockey v. Milne,* 16 Md. 200, 206 (1860). Thus, "once [an attachment is] properly and validly acquired, it is retained to await the result of the action . . . . If the defendant appears . . . the proper course is to try the short note case first." *Philbin v. Thurn, supra,* 103 Md. at 351, 63 A. at 574. Consequently, claims or liens arising subsequent to the date of the levy are subordinate to the judgment rendered in the attachment case. *Overmyer v. Lawyers Title Ins. Corp.,* 32 Md. App. 177, 184, 359 A. 2d 260, 265, *cert. denied,* 278 Md. 730 (1976), *cert. denied,* 429 U. S. 1123 (1977); W. Hodge & R. McLane, *supra.*

In applying these two sets of legal principles to the facts of the present case we are persuaded that the circuit court's order of January 11, 1978, establishing priorities among these competing claimants was prematurely entered. In fact, as we view it, that issue should not have even been considered by the court until the cause of action alleged by the declaration was completely adjudicated as it pertained to both the husband and wife defendants. *See generally* W. Hodge & R. McLane, *supra,* § 65, at 53-55. This conclusion is dictated by the fact that the "relation back doctrine" plays an important role in determining the order of priority here. Without an adjudication of the claim the State makes against both the husband and wife, there is no way to ascertain whether the State's attachment lien is effective so as to give it priority over the appellees' claims that were perfected after the attachment levy was laid. Even though at the time of the

January 11th order the State had only obtained a monetary judgment against Mr. Friedman, it was actively prosecuting its claim against his wife.[3] Because there is no requirement in this context that the judgments be perfected against the husband and wife at the same instant, it is plain that if the State has success in obtaining a monetary judgment against Mrs. Friedman in addition to the one it has against her husband, and each arises from a joint act of the husband and wife,[4] the two would unite to form a joint judgment so as to create an effective lien as of the date the original levy was made. *See Union Trust Co. v. Biggs,* 153 Md. 50, 57, 137 A. 509, 513 (1927); *Philbin v. Thurn, supra,* 103 Md. at 351, 63 A. at 574. *See generally* I. Gomborov, *The Law of Attachment in Maryland* § 3, at 6-7 (1926).

Thus the circuit court should have awaited the completion of the appellant's suit against Carolyn Friedman before determining the priorities among the claimants to the fund in the registry of the court; to rule otherwise would ignore the doctrine of relation back and defeat the security purpose underlying an attachment on original process. Since the order establishing priorities was prematurely entered, we vacate that order and remand the case for further proceedings.[5]

> *Order of the Circuit Court for Baltimore County dated January 24, 1978, vacated and case remanded to that court for further proceedings.*
>
> *Costs to be paid by appellees.*

---

3. Counsel for the appellees, both in their brief and at oral argument, mentioned that a summary judgment by consent (now marked settled and satisfied) was entered against Carolyn Friedman on April 19, 1978, in the amount of $172,500. It was also brought to our attention that a judgment of condemnation absolute was entered on the same day. These events occurred, however, after the appeal now before us and we are, therefore, not at liberty to consider them in our resolution of the issue presented by this case. Silverberg v. Silverberg, 148 Md. 682, 689-90, 130 A. 325, 328 (1925).

4. In the present appeal the possible issue of whether any judgments obtained against the Friedmans would be based on a transaction that created a joint obligation so as to compel payment from property they owned by the entireties is not now before us.

5. The appellees also attack the constitutional validity of the attachment on original process procedure utilized in this case claiming it is a violation

of both the federal and State principles of due process applied by this Court in Barry Properties v. Fick Bros., 277 Md. 15, 353 A. 2d 222 (1976). Since this appeal can be disposed of on nonconstitutional grounds, we do not reach this issue. Our action in this regard is supported by the longstanding principle that courts will not "anticipate a question of constitutional law in advance of the necessity of deciding it." Steamship Co. v. Emigration Commissioners, 113 U. S. 33, 39, 5 S. Ct. 352, 28 L. Ed. 899 (1885); *see* A & H Transp. Inc. v. Baltimore, 249 Md. 518, 531, 240 A. 2d 601, 608 (1968); State v. Cherry, 224 Md. 144, 155, 167 A. 2d 328, 333 (1961); Jeffers v. State, 203 Md. 227, 230, 100 A. 2d 10, 11 (1953). By disposing of the constitutional issue in this manner we are, of course, not to be understood as intimating any opinion as to whether an attachment on original process proceeding comports with constitutional due process. Further, we express no view on the question of whether these appellees, as distinguished from the Friedmans, have standing to raise this issue.